UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BLESSINGS WOMAN'S CARE AND
MEDICAL SPA,

        Plaintiff,

v.

CYNOSURE, LLC.,

        Defendant.
_____/

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BLESSINGS WOMAN'S CARE & MEDICAL SPA ("Plaintiff"), by its counsel, as and for its Complaint, as against the Defendant, CYNOSURE, LLC, ("Cynosure" or "Defendant"), respectfully alleges upon information and belief as follows:

## PARTIES

1. Plaintiff Blessings Woman's Care & Medical Spa is located in Winter Park, Florida and is incorporated in the State of Florida. Blessings Woman's Care & Medical Spa is solely owned by Dr. Andreia Acuna, a citizen of the State of Florida.

2. Defendant Cynosure is a Delaware limited liability company with its headquarters in Westford, Massachusetts, and was formerly known as Cynosure, Inc. Defendant is now owned by funds managed by Clayton, Dubilier & Rice., which

are organized under the laws of the Cayman Islands. Clayton, Dubilier & Rice is a Delaware corporation and its principal place of business is in New York.

## JURISDICTION AND VENUE

3.  This Court has diversity jurisdiction over this case under 28 U.S.C. section 1332 because Plaintiff and Defendant are citizens of different states. The amount in controversy is alleged to be over the minimum requirement of $75,000. Venue is proper here because Plaintiff resides in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

4.  This action concerns Plaintiff's purchase and financing to purchase a medical device sold by Defendant that it denoted as the MonaLisa Touch.

5.  Cynosure extolled to Dr. Acuna who was acting on behalf of Plaintiff, through Cynosure's Sales Representative Mark Frappampina, the benefits of using the MonaLisa Touch to treat patients suffering from symptoms of Vulvovaginal atrophy ("VVA"), which include vaginal and vulvar dryness, dyspareunia, burning, itching, and irritative symptoms of the lower urinary tract (frequency, urgency, dysuria), including for those who had completed treatment for breast cancer, in whom hormone therapy was contraindicated. That Cynosure Sales Representative also advised Dr. Acuna that the MonaLisa Touch was helpful with collagen and

elasticity. Cynosure's Sales Representative further advised Dr. Acuna that another doctor in Miami, Florida was successfully using two MonaLisa Touchs to treat the symptoms of VVA, and that Cynosure would assist Plaintiff with setting up an open house.

6. Cynosure's Sales Representative sent Plaintiff studies including one conducted in Italy purporting to show that the MonaLisa Touch was effective and safe in treating VVA symptoms. In a meeting at Plaintiff's offices, the Sales Representative advised Dr. Acuna that she would build her practice with the MonaLisa Touch, most doctors paid off the price for the MonaLisa Touch within 6 months and stated that patients would have their issues resolved after only three treatments. That Sales Representative also represented to Dr. Acuna at this meeting that the MonaLisa Touch was approved by the U.S. Food and Drug Administration (the "FDA") to treat the symptoms of VVA.

7. Based on these representations, in July, 2017, Dr. Acuna executed an agreement for the purchase of a MonaLisa Touch $CO_2$ Laser Workstation ("MonaLisa Touch"), and related products, for a total cost of $200,000.00. Concurrently, Plaintiff financed the purchase through Heartland Business Credit, financing that Cynosure arranged, which financing Dr. Acuna personally guaranteed. Pursuant to the finance agreement, after six initial monthly payments of $99, 60 monthly payments of $4,235.48 were due. These payments totaled

$254,722.80.

8.  Less than twenty-four hours after agreeing to purchase a MonaLisa Touch, Dr. Acuna advised Cynosure representative Mark Frappampina that Plaintiff wanted to cancel the purchase due to the cost, but he stated Plaintiff could not cancel the purchase, told Dr. Acuna not to worry as she would build her practice with the MonaLisa Touch and reiterated that with the revenues generated from using it, Plaintiff would be able to pay off the cost in six months.

9.  Plaintiff took delivery of the MonaLisa Touch in August 2017 at its offices in Winter Park, Florida.

10. Defendant's Sales Representative made the representations described in paragraphs 5, 6 and 8 above to Plaintiff in order to induce it to purchase and finance the purchase of the MonaLisa Touch.

11. Defendant also provided marketing materials to Plaintiff for use in marketing the MonaLisa Touch to Plaintiff's patients. These marketing materials highlighted the use of the MonaLisa Touch to treat symptoms of VVA, such as vaginal dryness. As a direct result of the representations made and marketing materials provided by Defendant regarding the MonaLisa Touch, Plaintiff made representations on Facebook, on the Blessings Woman's website and in the Florida Medical Association magazine touting the treatments offered by the MonaLisa Touch – to treat the symptoms of VVA.

12. On July 30, 2018, the FDA issued a warning to "patients considering any . . . procedure or <u>procedures intended to treat vaginal conditions and symptoms related to menopause</u> . . ." and to "health care providers who perform vaginal procedures using energy-based devices" to "alert patients and health care providers that the use of energy-based lasers to perform . . . non-surgical vaginal procedures to treat symptoms related to menopause . . . may be associated with serious adverse events [and that] [t]he safety and effectiveness of energy-based devices for treatment of these conditions has not been established." (emphasis added). (the "July 30, 2018 FDA Warning").

13. The FDA went on to state that "[t] o date, we have not cleared or approved for marketing any energy-based devices to treat these symptoms or conditions, <u>or any symptoms related to menopause</u> . . ." (emphasis added) but was "aware that certain device manufacturers may be marketing their energy-based medical devices for vaginal 'rejuvenation'" (which it defined to include the typical vaginal symptoms of menopause).

14. As succinctly explained by FDA Commissioner Dr. Scott Gottlieb, the FDA had:

> recently become aware of a growing number of manufacturers marketing "vaginal rejuvenation" devices to women <u>and claiming these procedures will treat conditions and symptoms related to menopause, urinary incontinence</u> or sexual function. The procedures use lasers and other energy-based devices to destroy or reshape vaginal tissue. These products have serious risks and don't

>have adequate evidence to support their use for these purposes. We are deeply concerned women are being harmed.

Statement from FDA Commissioner Scott Gottlieb, M.D., on efforts to safeguard women's health from deceptive health claims and significant risks related to devices marketed for use in medical procedures for "vaginal rejuvenation", dated July 30, 2018, available at https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm615130.htm; *see also* FDA Warns Against Use of Energy-Based Devices to Perform Vaginal 'Rejuvenation' or Vaginal Cosmetic Procedures: FDA Safety Communication, dated July 30, 2018, available at https://www.fda.gov/medicaldevices/safety/alertsandnotices/ucm615013.htm (text of warning) ("July 30, 2018 FDA Warning") (emphasis added).

15. As Commissioner Gottlieb further explained, while the FDA had cleared various laser and other energy-based devices to treat such conditions as abnormal or pre-cancerous cervical or vaginal tissue or genital warts, "the safety and effectiveness of these devices hasn't been evaluated or confirmed by the FDA for 'vaginal rejuvenation.'" *Id.* Nonetheless, companies who produce and sell these devices make "deceptive health claims" and engage in "deceptive marketing of a dangerous procedure with no proven benefit," which he stated was, in a word, "egregious." *Id.* As the July 30, 2018 FDA Warning itself stated, using such devices for vaginal rejuvenation "may lead to serious adverse events," including vaginal burns, scarring, pain during sexual intercourse, and recurring/chronic pain. July 30,

2018 FDA Warning.

16. Cynosure was one of the companies the FDA was referring to in its July 30, 2018 FDA Warning with regard to its marketing of its energy-based laser – the MonaLisa Touch.

17. In a letter dated July 24, 2018 to Cynosure, the FDA raised a number of examples of Cynosure's improper marketing of its MonaLisa Touch to treat the vaginal symptoms of menopause which the FDA could hardly have been clearer – are purposes for which it was not approved by the FDA and for which its safety and effectiveness had not been established. The FDA stated that the MonaLisa Touch had only been cleared "for incision, excision, ablation, vaporization and coagulation of body soft tissues in medical specialties including aesthetic (dermatology and plastic surgery), podiatry, otolaryngology (ENT), gynecology, neurosurgery, orthopedics, general and thoracic surgery (including open and endoscopic), dental and oral surgery and genitourinary surgery." July 24, 2018 Letter from Cesar A. Perez, PhD, Chief of the Surveillance and Enforcement Brach, Division of Premarket and Labeling Compliance, Office of Compliance, Center for Devices and Radiological Health to Connie Hoy, Official Correspondent, Cynosure, Inc.

18. On or about July 30, 2018, Plaintiff became aware of the July 30, 2018 FDA Warning, which revealed to it for the first time that the MonaLisa Touch was not FDA approved for the purposes for which Defendant sold the MonaLisa Touch

to Plaintiff and the treatments for which Defendant's Sales Representative represented to Plaintiff (the treatment of the symptoms of VVA). Upon learning the July 30, 2018 FDA Warning, Plaintiff justifiably ceased using the device and has not used it since.

19. Had Plaintiff been aware that the MonaLisa Touch was not FDA approved for the treatments for which Defendant marketed the device to them (the treatment of the symptoms of VVA), Plaintiff would not have purchased the MonaLisa Touch or agreed to finance that purchase. Plaintiff purchased the MonaLisa Touch strictly for the procedures that were marketed by Defendant as being approved by the FDA (the treatment of the symptoms of VVA), as set forth above, and for no other purpose.

20. The MonaLisa Touch was also never as popular as Cynosure had claimed it would be, with only six patients being interested in having treatments with it between the time it was installed in Plaintiff's office and the date of the FDA Warning.

21. Upon learning of the FDA Warning, Plaintiff contacted a Cynosure representative to request a refund. This representative said "there were be no refunds or returns for the MonaLisa Touch after 24 hours of purchasing."

22. As a result, Plaintiff has been damaged by, among other things, the cost of purchasing and financing the purchase of the MonaLisa Touch at issue here.

## FIRST CAUSE OF ACTION

## CLAIM UNDER THE FDUTPA

23. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "22" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

24. Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

25. As set forth in paragraphs 5, 6 and 8 above, Defendant Cynosure engaged in the deceptive and unfair practices of marketing and selling the MonaLisa Touch by misrepresenting that the MonaLisa Touch was approved by the FDA for the treatment of the symptoms of VVA and misrepresenting that Plaintiff's purchase of the MonaLisa Touch could not be cancelled within 24 hours of purchase.

26. A consumer of Plaintiff's consumer type would reasonably have relied on the statements made by Cynosure.

27. These deceptive practices damaged Plaintiff by causing it to purchase a medical device and enter a financing agreement leading to a loss of hundreds of thousands of dollars. These deceptive practices were likely to and did deceive Plaintiff.

28. Defendant thereby violated Fla. Stat. § 501.204(1) prohibiting unlawful acts and practices in trade of commerce.

29. As a result of the Defendant's deceptive or unfair practices, Plaintiff

has suffered damages including the costs it has incurred (and obligated to incur) in purchasing and financing the MonaLisa Touch which Plaintiff would not have purchased or financed had it not been misled by Defendant that the MonaLisa Touch was FDA approved to treat the symptoms of VVA. Plaintiff is therefore entitled to damages under Fla. Stat. § 501.211(2) also including attorney's fees and court costs.

## SECOND CAUSE OF ACTION

## FRAUD AND FRAUD IN THE INDUCEMENT

30. Plaintiff repeats, reiterates, and realleges each and every allegation contained in Paragraphs "1" through "22" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

31. As set forth in paragraphs 5, 6 and 8 above, Defendant's Sales Representative made material misrepresentations of then existing facts to induce Plaintiff to purchase the MonaLisa Touch and finance that purchase. These representations were made with the intent and purpose to cause Plaintiff to rely upon them and purchase and finance its purchase of a MonaLisa Touch.

32. Contrary to these representations, Defendant knew, or recklessly disregarded, that the MonaLisa was not approved by the FDA to treat the symptoms of VVA at the time these representations were made. Defendant knew this, or acted in reckless disregard of this fact based on, among other things, its communications with the FDA concerning approvals of the MonaLisa Touch and its procedures.

Indeed, unbeknownst to Plaintiff, on or about March 17, 2015, Cynosure sought FDA approval to market its MonaLisa Touch laser for "the treatment of symptoms related to GSM including Vaginal Dryness, Vaginal Burning, Vaginal Itching, Pain, Dysuria and Dyspareunia" but the FDA informed Cynosure on or about June 5, 2015 that these intended uses of the MonaLisa Touch raise "different safety and effectiveness questions" than the uses for which the MonaLisa Touch had previously been approved by the FDA. These previous facts were not made available to Plaintiff; they were not available publicly.

33. In addition, Defendant's Sales Representative knew of Cynosure's policy that a sale could be cancelled within 24 hours but misrepresented that Plaintiff's purchase could not be cancelled within 24 hours. The true facts were not available to Plaintiff as they were not available publicly.

34. Plaintiff justifiably relied upon Defendant's representations given Defendant's superior knowledge as to what the FDA did (or did not approve) and the uses for which the MonaLisa Touch was approved by the FDA and because it would have been unlawful for Cynosure's representatives to market the MonaLisa Touch as a treatment for the symptoms of VVA unless such marketing was approved by the FDA, in agreeing to purchase and finance the purchase of the MonaLisa Touch.

35. As a result of the Defendant's false or misleading statements, Plaintiff

has suffered damages including the costs they have incurred (and obligated to incur) in purchasing and financing the MonaLisa Touch which Plaintiff would not have purchased or financed had it not been misled by Defendant that the MonaLisa Touch was FDA approved to treat the symptoms of VVA.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

36. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "22" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

37. Defendant has received the purchase price it charged Plaintiff to purchase the MonaLisa Touch from Heartland Business Credit – the financing company Defendant arranged to finance Plaintiff's purchase of the MonaLisa Touch. Plaintiff would not have incurred any of the costs had Defendant been truthful about the absence of FDA approval to treat the symptoms of VVA.

38. By virtue of their obtaining these monies paid by Plaintiff to purchase the MonaLisa Touch, Defendant has been unjustly enriched, and has appreciated that benefit to the detriment of Plaintiff.

39. Defendant's retention of the monies it has gained through its wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

40. It would be against equity and good conscience for Defendant to retain these funds given the misrepresentations Defendant utilized to induce Plaintiff to purchase and finance the MonaLisa Touch.

41. Defendant should be required to make restitution to Plaintiff, in an amount to be determined, of the monies Defendant has obtained from Plaintiff directly or indirectly by which it has been unjustly enriched.

## FOURTH CAUSE OF ACTION

## MONEY HAD AND RECEIVED

42. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "22" inclusive of this Complaint with the same force and effect as though more fully set forth at length herein.

43. Defendant has obtained the purchase price it charged Plaintiff to purchase the MonaLisa Touch from Heartland Business Credit – the financing company Defendant arranged to finance Plaintiff's purchase of the MonaLisa Touch. Plaintiff would not have incurred any of the costs had Defendant been truthful about the absence of FDA approval to treat the symptoms of VVA.

44. It would be against equity and good conscience for Defendant to retain these funds given the misrepresentations Defendant utilized to induce Plaintiff to purchase and finance the MonaLisa Touch.

45. Defendant should be required to make restitution to Plaintiff, in an

amount to be determined, of the monies Defendant has received from Plaintiff directly or indirectly. It is against the principles of good conscience for Defendant to retain these monies without compensating Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as against the Defendant as follows:

A. For compensatory, equitable and/or restitutionary damages available under the causes of action set forth herein according to proof;

B. For attorneys fees and costs; and

C. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  February 5, 2021          **VARNELL & WARWICK, P.A.**

By:   /s/ Janet R. Varnell
Janet R. Varnell, FBN: 0071072
Brian W. Warwick, FBN: 0605573
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301

*jvarnell@varnellandwarwick.com*
*bwarwick@varnellandwarwick.com*
*mpeterson@varnellandwarwick.com*
*ewillis@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

KLAFTER OLSEN & LESSER LLP
Jeffrey A. Klafter
Seth R. Lesser
Cyrus Kornfeld
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200

– and –

JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.
Michael A. Galpern
100 Century Parkway, Suite 305
Mount Laurel, NJ 08054
Telephone:  (973) 379-4200

*Attorneys for Plaintiff*